# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

TIMOTHY F. BUTLER,

        Movant - Appellant,

  v.

BIOCORE MEDICAL
TECHNOLOGIES, INC.; BIOCORE,
INC.,

        Defendants - Appellees.

No. 00-3181

**JUDGMENT**

Filed November 4, 2003

Before **HENRY**, **HOLLOWAY** and **LUCERO**, Circuit Judges.

    This case originated in the  District of Kansas and was submitted on the briefs at the
direction of the court.

    The judgment of that court is affirmed.

Entered for the Court
PATRICK FISHER, Clerk

by:
Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

NOV 4 2003

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TIMOTHY F. BUTLER,

      Movant - Appellant,

v.

BIOCORE MEDICAL
TECHNOLOGIES, INC.; BIOCORE,
INC.,

      Defendants - Appellees.

No. 00-3181

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 98-CV-2175-KHV)**

---

Submitted on the brief:

Timothy F. Butler, pro se.

---

Before **HENRY, HOLLOWAY** and **LUCERO**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge

## I

    This case is an appeal from an order of the District Court for the District of

Kansas, finding that Appellant, attorney Tim Butler, violated the Kansas Code of

Professional Conduct and the Kansas Rules of Professional Conduct. *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660 (D. Kan., 1998).  Butler asks this court to vacate these findings.  For the reasons detailed below, we decline to do so.

The challenged district court order arose in the context of a dispute between Biocore Medical Technologies and Biocore, Inc. (collectively, "Biocore") on one side and Hamid Khosrowshahi ("Khosrowshahi") and Margaret Callaci on the other. Khosrowshahi sued his former employer, Biocore, alleging that he was owed stock and deferred compensation.  Biocore sued Khosrowshahi for alleged misappropriations of trade secrets.  Biocore filed suit in the District of Kansas, while Khosrowshahi filed in the Southern District of New York.  The two actions were consolidated in the District of Kansas.

On April 8, 1992, the district court entered an order allowing Butler, a member of the New York and Connecticut bars, to appear *pro hac vice*, representing Khosrowshahi, with Ruth Benien as local counsel.  Biocore moved to disqualify Butler and to revoke his *pro hac vice* admission, alleging that Butler violated the Federal Rules of Civil Procedure, the Kansas Canons of Professional Responsibility ("CPR"), the Kansas Model Rules of Professional Conduct ("MRPC"), and the District of Kansas' local rules.[1]  Specifically

---

[1]As noted by the district court:

[u]nder D.Kan. rule 83.6.1, federal courts in the District of Kansas follow the Code of Professional Responsibility and Model Rules of Professional Conduct ("MRPC") as adopted by the Supreme Court of Kansas.  D. Kan.

Biocore claimed that Butler violated Fed. R. Civ. P. 45(b)(1) (requiring notice to all

parties of subpoenas) and 5(d) (requiring the filing of papers that have been served on a

party be given to the court clerk); D. Kan. Rules 83.5.4 (*pro hac vice* requirements for

involvement of local counsel) and 26.3 (requiring the filing of notice of service of

discovery disclosures, requests, or responses); MRPC 3.4(b) (prohibiting attorneys from

offering improper inducements to witnesses), 4.2 (prohibiting communications of the

subject matter of representation with a represented party), and 8.4(g) (providing that it is

professional misconduct for a lawyer to "engage in any . . . conduct that adversely reflects

on the lawyer's fitness to practice law");[2] and Canon 9 of the CPR (requiring attorneys to

avoid the appearance of impropriety). The district court made specific findings of fact

regarding Butler's conduct and concluded that he had violated all these rules except

--------

Rule 83.6.1. The Kansas Supreme Court has adopted the MRPC as the
"general standards of conduct and practice required of the legal profession
in Kansas." Kan. S. Ct. Rules, Rule 226. The court also adopted the
comments to the MRPC, "[t]o the extent that they are not inconsistent" with
MRPC rules or Kansas case law. *Id.* Kansas continues to apply the Canons
of Professional Responsibility ("CPR") "as general statements of required
professional conduct." *Id.* The Kansas Supreme Court originally adopted
the CPR under Kan. S. Ct. Rule 225. *Id.*

*Biocore*, 181 F.R.D. at 669. Butler raises no argument concerning the validity of any of
these rules.
    [2]This rule is found in the Kansas Model Rules of Professional Conduct in Kan.
S.Ct. Rules, Rule 226, but not in the MRPC. The comment to rule 8.4(g) explains that a
"pattern of repeated offenses, even ones of minor significance when considered
separately, can indicate indifference to legal obligation." The court relied on this
provision in making its findings.

- 3 -

MRPC 3.4(b) and 4.2. *Biocore*, 181 F.R.D. at 666-75.

Nonetheless, the district court denied the motion to disqualify Butler and instead ordered him to remedy all outstanding violations of Fed. R. Civ. P. 5(d) and Local Rules 26.3 and 83.5.4. The district court also ordered the clerk to mail a copy of the order containing the district court's findings that Butler had violated rules of professional conduct to every court where Butler had been admitted to practice. Approximately two months later, in November of 1998, the district court issued an order disqualifying Butler for violation of a protective order and reprimanding him for continued ethical violations. *Biocore Med. Techs., Inc. v. Khosrowshahi*, Nos. Civ.A. 98-2031-KHV & Civ.A. 98-2175-KHV, 1998 WL 919126 (D. Kan. Nov. 6, 1998).

Butler filed an interlocutory appeal that was dismissed on April 5, 1999. The district court then issued a final order on May 4, 2000. *Biocore v. Khosrowshahi*, 96 F. Supp. 2d 1221 (D. Kan. 2000). Butler now appeals only the first order–the one mailed to every court to which Butler had been admitted.

## II

Butler explicitly appeals only the District Court's finding that he violated Canon 9 and MRPC 8.4(g). Appellant's Brief at 2-3. As Butler later explains, he is appealing only the findings of "ethical violations," claiming that they "impact heavily on Butler's stature as an attorney." *Id.* at 8. Implicitly, however, Butler also disputes all the district court's findings since they form the basis of the MRPC 8.4(g) violation.

# A

## Jurisdiction

Before reaching the merits of this appeal, we must first ascertain whether we have

jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (U.S. 1998).

"This question the court is bound to ask and answer for itself, even when not otherwise

suggested, and without respect to the relation of the parties to it." *Id.* at 94. This

threshold requirement is "inflexible and without exception." *Id.* at 95. Pursuant to 28

U.S.C. § 1291 as limited by Article III, we have jurisdiction to hear appeals from the final

orders of district courts, including post-judgment appeals by attorneys of orders that

"directly aggrieve them." *Weeks v. Indep. Sch. Dist.*, 230 F.3d 1201, 1207 (10th Cir.

2000). We, therefore, have jurisdiction to hear this appeal only if the order Butler

challenges has "directly aggrieve[d]" him. *Id.* In other words, we have jurisdiction only

if Butler has been "injured in the legal sense," by the order being appealed. *United States*

*v. Gonzales*, 344 F.3d 1036, 1039 (10th Cir. 2003). For the reasons detailed below, we

hold that he has.

Here, Butler appeals, post-judgment, portions of a district court order that found

him to have committed "ethical violations." Other than making the finding of attorney

misconduct, this order neither expressly identified itself as a reprimand nor imposed any

sanction, monetary or otherwise. The order was, however, mailed to every court in which

Butler had been admitted to practice. Thus, the injury Butler may claim is the damage

widely done to his professional reputation. The question of whether we have jurisdiction to hear this appeal, therefore, distills to the question of when, if ever, an order thus affecting an attorney's professional reputation imposes a legally sufficient injury to support appellate jurisdiction. For the reasons detailed below, we hold that it does.

Heretofore we have not directly addressed this question. *See id.* at 1040 (recognizing that we have "not decided whether an attorney is 'directly aggrieved' by an order simply finding misconduct" and declining to decide the question). Instead, we have held that damage to an attorney's professional reputation is legally sufficient in connection with a disqualification order, *Weeks*, 230 F.3d at 1207, and that such damage is sufficient to sustain an appeal of a disqualification order even though the underlying case was settled, *Johnson v. Board of County Comm'rs*, 85 F.3d 489, 492-93 (10th Cir. 1996). Other circuits, however, have directly addressed whether an order damaging only an attorney's professional reputation and not accompanied by any other form of sanction can be appealed and have come to one of three results: never appealable, always appealable, and appealable only if the order is "expressly identified as a reprimand."

The Seventh Circuit is the only circuit falling into the first category and considers an order only damaging an attorney's professional reputation as never appealable. *Clark Equip. Co. v. Lift Parts Mfg. Co., Inc.*, 972 F.2d 817, 820 (7th Cir. 1992) ("[A]n attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects."). In reaching its conclusion, the

- 6 -

Seventh Circuit balanced the severity of the harm of damage to an attorney's professional reputation–characterizing it as a "speculative contingency" rather then a concrete injury, *id.*,–against the practical considerations of "congested appellate dockets and . . . the difficulty of assuring an adversary contest in most such appeals." *Id.* The result of this balancing test, the Seventh Circuit concluded, is that an order damaging only an attorney's professional reputation, while potentially a significant enough injury to satisfy the case or controversy requirements of Article III, is not a "final decision" for the purposes of § 1291 and, therefore, not appealable. *Id.*; *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir. 1984). The Seventh Circuit did, however, leave open the possibility that an attorney damaged by an order finding misconduct alone could seek relief by a writ of mandamus. *Clark*, 972 F.2d at 820.

The Fifth and District of Columbia Circuits fall into the second category and both allow attorneys to appeal orders that find misconduct alone. *Walker v. City of Mesquite*, 129 F.3d 831, 832-33 (5th Cir. 1997) (holding that "the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct"); *Sullivan v. Committee on Admissions and Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967) (holding that a finding of professional misconduct not accompanied by other sanctions is analogous to a defendant found guilty but given a suspended sentence and is appealable). The Ninth Circuit also falls into this

category, though through a slightly different approach. It allows attorneys to appeal

orders that are "inordinately injurious to a lawyer's reputation" but does not allow appeals

from orders that are properly considered "routine judicial commentary." *United States v.*

*Talao*, 222 F.3d 1133, 1137 (9th Cir. 2000). The Ninth Circuit, however, considers an

order finding a knowing and wilful violation of an ethical rule as, per se, "inordinately

injurious" and, therefore, appealable. *Id.* at 1337-38. These circuits base their decisions

primarily on how severe they consider an injury to an attorney's reputation. The Fifth

Circuit, for example, held "beyond peradventure that one's professional reputation is a

lawyer's most important and valuable asset." *Walker*, 129 F.3d at 832 (citing *Cooter &*

*Gell v. Hartmax Corp.*, 496 U.S. 384, 412 (1990) (Stevens, J., concurring)). Similarly,

the Ninth Circuit noted that a finding of misconduct is "likely to stigmatize [the attorney]

among her colleagues and potentially could have a serious detrimental effect on her

career." *Talao*, 222 F.3d at 1138.

The First Circuit is the only circuit falling into the third category and is alone in

adopting a formalistic approach that allows attorneys to appeal orders damaging their

professional reputations only where the challenged order is "expressly identified as a

reprimand." *In re Williams*, 156 F.3d 86, 92 (1st Cir. 1998). In reaching this conclusion,

the First Circuit acknowledged that "a lawyer's professional reputation is his stock in

trade, and blemishes may prove harmful in a myriad of ways." *Id.* at 90. Nonetheless, the

First Circuit limited the appealability of orders finding misconduct because of the

difficulty in securing a "balanced adversarial presentation that is so helpful to the proper functioning of the appellate process" in such appeals, *id.* at 91, and the need for district courts to "retain the power to comment, sternly when necessary, on a lawyer's performance without wondering whether those comments will provoke an appeal." *Id.* at 92. The First Circuit made clear, however, that words alone could be sufficient if labeled as a reprimand. *Id.* Finally, like the Seventh Circuit, the First Circuit left open the possibility of relief through a writ of mandamus. *Id.* at 92-93.

Of these three approaches, we believe that the position taken by the majority of the circuits, that an order finding attorney misconduct but not imposing other sanctions is appealable under § 1291 even if not labeled as a reprimand, is the proper position. We therefore join the majority of circuits in holding that an order finding ethical violations is appealable, post-judgment, under § 1291. We also wish to make clear that only orders finding misconduct are appealable and not "every negative comment or observation from a judge's pen about an attorney's conduct or performance . . . ." *Gonzales*, 344 F.3d at 1047 (Baldock, J., dissenting).

We reach this conclusion for three reasons. First, we believe, as our precedent dictates, that damage to an attorney's professional reputation is a cognizable and legally sufficient injury. *See Weeks*, 230 F.3d at 1207; *Johnson*, 85 F.3d at 492-93. Such damage is to the attorney's, "most important and valuable asset," *Walker*, 129 F.3d at 832, and "may prove harmful in a myriad of ways," *Williams*, 156 F.3d at 92. As such,

neither the imposition of a monetary sanction nor an explicit label as a reprimand are

prerequisites to appealability. A rule requiring monetary sanctions, as the Fifth Circuit

noted, "would maintain that an attorney has more of a reason and interest in appealing the

imposition of a $100 fine than appealing a finding and declaration by the court that

counsel is an unprofessional lawyer prone to engage in blatant misconduct." *Walker*, 129

F.3d at 832. This is contrary to our recognition of the importance of an attorney's

professional reputation, *see Weeks*, 230 F.3d at 1207; *Johnson*, 85 F.3d at 492-93, and

fails to recognize that, like monetary sanctions, "linguistic sanctions can . . . in the long

run . . . strike the lawyer's bank account . . . ." *Williams*, 156 F.3d at 97 (Rosenn, J.

dissenting). Similarly, a rule requiring an explicit label as a reprimand ignores the reality

that a finding of misconduct damages an attorney's reputation regardless of whether it is

labeled as a reprimand and, instead, trumpets form over substance.

Second, we believe that the concern over the lack of an adversarial appeal in such

cases is assuaged by the fact that, on appeal, we review the district court's order–detailing

the reasons for any finding of attorney misconduct–in addition to the appellant's brief.

Thus, we will not "hear only one side of the story." *Id.* at 91. Finally, we believe that the

need for district courts to be free from excessive appellate supervision is adequately

addressed by the deferential standard of review applied to such appeals–a district court

order finding misconduct would be overturned only if supported by "no reasonable basis."

*Weeks*, 230 F.3d at 1207. Thus, the district court has ample discretion to "comment,

- 10 -

sternly when necessary, on a lawyer's performance" in order to "assure the proper

conduct of proceedings in his or her court." *Williams*, 156 F.3d at 92.  Further, excessive

appeals will be limited by "the risk that this court, reaching the merits, will agree that the

sanction is justified thus giving the sanction far more force then it would have had if it

had come from the trial judge unendorsed by a reviewing court." *Williams v. United

States*, 158 F.3d 50, 51 (1st Cir. 1998) (Lynch, J., dissenting from a denial of reh'g en

banc).

In conclusion, we hold that an order finding that an attorney has committed an

ethical violation but not imposing any other sanction, monetary or otherwise, can be

appealed as a final order under § 1291.  Here, the order Butler appeals found attorney

misconduct on his part and was mailed to every court where he had been admitted to

practice.  We, therefore, have jurisdiction to hear Butler's appeal and now turn to the

merits.

**B**

**Standard of Review**

We review for abuse of discretion all aspects of a trial court's imposition of

sanctions for rules violations.  *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87

F.3d 435, 439 (10th Cir. 1996) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384,

405 (1990)).  "The trial court's factual findings regarding the conduct of attorneys will

not be disturbed unless there is no reasonable basis to support those conclusions.  We

review de novo the trial court's interpretation of the applicable rules of professional

responsibility and the trial court's interpretation of a statute." *Weeks*, 230 F.3d at 1207

(citations omitted).

### III

### A

### Canon 9

Butler, in preparing for litigation, contacted a number of Biocore's former

employees including Marilyn Johnson ("Johnson"). Johnson, the district court found,

"possessed substantial confidential information about [Biocore] that she agreed to keep

confidential." *Biocore,* 181 F.R.D. at 673. Specifically, the district court noted Johnson's

duties as a Biocore employee and her access to confidential materials:

> Johnson had worked as the executive administrative assistant for various
> high-ranking officers of [Biocore]: the president, the chief executive
> officer, the chairman of the board, and the chief financial officer.
> Khosrowshahi was her immediate supervisor. While employed for
> [Biocore], Johnson maintained corporate files, customer lists, expense
> reports, grant submissions, and information about sales, accounts
> receivable, and pricing structures. While general faxes went to a fax
> machine in a general location, faxes for high-ranking employees went to a
> fax machine in Johnson's office. Johnson received confidential faxes,
> opened confidential mail, pulled confidential information from files in her
> office, typed confidential correspondence, and had confidential information
> on computer disks. Johnson took to her home certain computer disks which
> contained information on sales, customer lists, medicare, and sales
> representatives' agreement letters and logs. Both parties originally listed
> Johnson as a potential witness in this case.

*Biocore,* 181 F.R.D. at 665. Based upon these facts, the district court found that Johnson

possessed "a veritable treasure-trove of information about plaintiffs' operations" that while "likely to be relevant," was protected by a confidentiality agreement. *Id.* at 673.

Butler hired Johnson, who was then considering an employment discrimination claim with the EEOC against Biocore, to help Butler review the disorganized and unlabeled documents he received in discovery from Biocore. Butler paid Johnson a total of approximately $400 at a rate of $10 an hour. Both Butler and Johnson testified at trial and both insisted that Johnson did not reveal any confidential information while working for Butler. Their testimony, however, was not completely consistent. While Butler testified that he contacted Johnson to obtain her help in reviewing documents he found disorganized and unlabeled, Johnson testified she was contacted by Butler *before* he received the documents. *Id.* Johnson also testified, and Butler denies, that Butler asked her about her knowledge, position, and duties at Biocore.

Canon 9 provides that "[a] lawyer should avoid even the appearance of impropriety." The district court, citing multiple authorities, held that the "appearance of impropriety" is raised when an attorney hires an ex-employee of an adversary who had been exposed to substantial amount of confidential information to assist in litigation, even when the attorney takes precautions to prevent the disclosure of confidential information. *Id.* (citing *Rentclub, Inc.* v. *TransAmerica Rental Fin. Corp.*, 811 F. Supp. 651, 655 (M.D. Fla. 1992); *MMR/Wallace Power & Indus., Inc.* v. *Thames Assocs.*, 764 F. Supp. 712, 726 (D. Conn. 1991); *In re Data Gen. Corp. Antitrust Litig.*, 5 Fed. R. Serv. 3d 510, 510

- 13 -

(N.D. Cal. 1986); *Am. Prot. Ins. Co. v. MGM Grand Hotel*, Nos. CIV-LV-82-26 HEC &
CIV-LV-82-96 HEC, 1983 WL 25286 (D. Nev., Dec. 8, 1983)). Therefore, the district
court concluded, in hiring Johnson, Butler "raise[d] an appearance of impropriety" and, in
so doing, violated Canon 9.

On appeal, Butler argues that his case is distinguishable from the cases cited by the
district court on three grounds. First, Butler notes that, unlike in *Rentclub*,
*MMR/Wallace*, and *Am. Prot. Ins.*, the former employee he hired, Johnson, did not have
access to privileged information regarding litigation. Second, Butler claims that the sole
reason for Johnson's hiring was Biocore's conduct in supplying "over 80 boxes of
mislabel documents." Finally, Butler asserts that Biocore consented to Johnson's
employment in not physically preventing her from reviewing the discovery documents
which were located at Biocore's counsel's office. We review each of these arguments in
turn and, for the reasons detailed below, find them all unconvincing.

We find Butler's first argument, that Johnson had no access to privileged
information regarding litigation, unconvincing because access to privileged information is
not an element of a Canon 9 violation. While Butler is correct in noting that the former
employees hired in *Rentclub*, *MMR/Wallace*, and *Am. Prot. Ins.* had access to privileged
information regarding litigation and Johnson did not, those cases do not provide that such
access is a prerequisite to a finding of an ethical violation. 811 F. Supp. at 655; 764 F.
Supp. at 726; 1983 WL 25286. Instead, those cases show that access to privileged

- 14 -

information can be used as grounds to *disqualify* an attorney and not that such access is necessary for finding an ethical violation. *Rentclub*, 811 F. Supp. at 655 (finding ethical violations based upon inducements to breach confidentiality agreements independent of any privileged information regarding litigation); *Data Gen.*, 5 Fed. R. Serv. 3d at 510 (finding ethical violations based upon disclosure of trade secrets). This, not coincidentally, is the rule applied by the district court in this case when it declined to disqualify Butler as counsel–finding the lack of access by Johnson to privileged confidential information as an "important distinction" between Butler's case and *Rentclub*, *MMR/Wallace*, and *Am. Prot. Ins.*

We find Butler's second argument, that the disorganized state of the documents required Johnson's involvement, to be unconvincing because there is no showing Johnson was the only person who could have reviewed the discovery documents provided by Biocore. Indeed, Butler himself testified that "she, (Johnson),was one of the *few* people that were qualified to do that that were available to help" him. App. 368 (Butler's testimony) (emphasis added). Further, an examination of Butler's testimony reveals that he hired Johnson before any need to organize the discovery documents arose. Butler testified that he received assurances from Mike Schultz, Biocore's counsel, that Biocore employees would reorganize the discovery documents. *Id.* at 326 (Butler's testimony). Butler further testified that, just after receiving assurances from Schultz, his client, Khosrowshahi, suggested that Johnson might be able to help organize the documents. *Id.*

at 327.  Instead of locating another assistant or waiting for the Biocore employees to organize the documents, Butler immediately contacted Johnson.  *Id.*  While Butler waited to see whether Biocore's employees would organize the files before actually bringing in Johnson, this is not evidence that Johnson was uniquely qualified.  *Id.*  (Butler's testimony that Biocore "had made an effort," but that the files were still in unacceptable condition).  As such, there is no evidence in the record that Johnson was the only qualified person he could have hired.  The district court, therefore, had a reasonable bias from which to conclude that "Butler could have easily avoided" a violation of the rules by not hiring Johnson.

We are likewise unpersuaded by Butler's third argument, that Biocore consented to Johnson's hiring.  Butler argues that because Biocore could have but did not prevent Johnson from gaining access to the discovery documents, he committed no ethical violation. The crux of Butler's Canon 9 violation, however, was access to confidential information gained by Johnson as a Biocore employee–something Biocore could not have prevented by denying Johnson access to the discovery documents.  Though Biocore's apparent acquiescence may have lulled Butler into believing that Biocore had later consented, any acquiescence occurred after Butler had violated Cannon 9 by speaking with and hiring Johnson.

We are, therefore, unpersuaded that the district court abused its discretion in finding that Butler violated Canon 9 without a reasonable basis.

- 16 -

**B**

**MRPC 8.4(g)**

Here, the district court found Butler to have violated MRPC 8.4(g) in violating

Fed. R. Civ. P. 45(b)(1) and 5(d), D. Kan. Rules 83.5.4(c) and 26.3, and Canon 9.  MRPC

8.4(g) prohibits a lawyer from "engag[ing] in any other conduct that adversely reflects on

a the lawyer's fitness to practice law."  The conduct prohibited by this rule includes "[a]

pattern of repeated offences, even ones of minor significance when considered

separately."  MRPC 8.4 cmt.

On appeal, Butler makes four arguments as to why the district court abused its

discretion in finding him in violation of MRPC 8.4(g):

> First, the District Court did not find that Butler committed any willfully
> wrong act which would justify the finding of an ethical violation.  Second, .
> . . Butler did not violate Fed.R.Civ.P. 45(b)(1) . . . .  Third Butler did not
> violate Canon 9.  Fourth, the court specifically found that there was no
> prejudice to BioCore.

Appellant's Brief at 14-15 (citing *Biocore,* 181 F.R.D. at 675).  We address each

argument in turn and, for the reasons detailed below, find them all unconvincing.

We find Butler's first argument, that there was no finding of a "willfully wrong

act," unconvincing because there is no need to find willfulness to find an ethical

violation.  The district court specifically found that, "Butler has failed to follow required

procedural and ethical rules to a degree which raises serious questions about his ability

and willingness to accept and perform the obligations of his representation in this case."

*Biocore*, 181 F.R.D. at 674. Butler concedes that he violated procedural rules–D. Kan.

Rules 26.3 and 83.5.4(c), and Fed. R. Civ. P. 5(d), which govern the signing of discovery

demands and responses by local counsel and the filing of such discovery with the district

court–but cites no authority for the proposition that ethical violations must be willfully

wrong. As the comment to MRPC 8.4 makes clear, MRPC 8.4 is concerned not only with

willful conduct but also conduct indicating an "indifference to legal obligation." MRPC

8.4 cmt. Therefore, Butler's violation of procedural and ethical rules, need not be willful

to serve as a basis for a violation of MRPC 8.4(g).

As stated above, we find Butler's third argument, that he did not violate Canon 9,

to be unpersuasive because the district court had a reasonable basis to conclude that

Butler had violated Canon 9. We also find Butler's fourth argument, that there was no

prejudice to Biocore, unconvincing because courts may discipline attorneys for violations

that do not prejudice opposing parties. *See, e.g., In the Matter of Searer*, 950 F. Supp.

811, 815 (W.D. Mich. 1996) (reprimanding attorney for a violation of a rule of

professional conduct even after finding no prejudice to the opposing party). This is

justified because attorney misconduct both implicates the attorney's fitness to function as

an officer of the court and triggers the court's responsibility to protect the public from

unscrupulous or unqualified practitioners. *Standing Comm. on Discipline v. Ross*, 735

F.2d 1168, 1170 (9th Cir. 1984) (citing *Ex parte Wall*, 107 U.S. 265 (1882)). Therefore,

the harmlessness of an attorney's conduct does not render proper those acts that would

otherwise constitute a violation.

Finally, we turn Butler's second argument, that he did not violate Fed. R. Civ. P. 45(b)(1), and, for the reasons detailed below, find it unconvincing.  We review a trial court's interpretation of the Federal Rules of Civil Procedure *de novo*.  *Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995).  The district court held that "prior notice" under Rule 45(b)(1) requires notice be given prior to service rather then prior to production.  *Biocore*, 181 F.R.D. at 667 (citing *Callanan v. Riggers & Erectors, Inc.*, 149 F.R.D. 519, 519 (D.V.I. 1992); *Santiago-Lugo* 904 F. Supp. 43, 47 (D.P.R. 1995); *Spencer v. Steinman*, 179 F.R.D. 484, 488 (E.D. Pa. 1998); *Seewald v. IIS Intelligent Info. Sys., Ltd.*,1996 WL 612497, Nos. 93 CV 4252 (FB), 95 CV 824 (FB), & 94 CV 3603 (FB), (E.D.N.Y., Oct. 16, 1996))  The court based its reasoning on its observation that "the purpose behind the notice requirement is to provide opposing counsel an opportunity to object to the subpoena."  *Biocore*, 181 F.R.D. at 667.  A contrary interpretation of Rule 45(b)(1), as noted by the district court, "would allow a party to mail notice to opposing counsel one day prior to the date of compliance, effectively prohibiting counsel from responding."  *Id.*

Further, the 1991 Advisory Committee Notes to Rule 45 indicate that the purpose of the notice requirement is to provide opposing parties an opportunity to object to the subpoena.[3]  For an objection to be reasonably possible, notice must be given well in

---

[3]The 1991 amendment added the notice requirement to Rule 45.

advance of the production date.  Finally, we note that two other district courts have

reached the same conclusion as the district court did below.  *See Schweizer v. Mulvehill*,

93 F. Supp. 2d 376, 411 (S.D.N.Y. 2000) (citing 9 *Moore's Federal Practice* ¶

45.03[4][b] (3d ed. 2000)); *Murphy v. Bd. of Educ. of Rochester Sch. Dist.*, 196 F.R.D.

220, 222-23 (W.D.N.Y. 2000) (also citing *Moore's Federal Practice*).[4]  We therefore

agree that Rule 45(b)(1) requires notice to be given prior to service of a subpoena.

In this case, the district court found that Butler failed to serve Biocore with prior

notice of three subpoenas–mailing notice for two subpoenas ten days after service and

mailing notice for one subpoena seven days after service.  *Biocore*, 181 F.R.D. at 667.  In

so doing, Butler violated, Fed. R. Civ. P. 45(b)(1).

Butler argues in the alternative that, even if he violated procedural rules, the

district court erred when it found that he had violated MRPC 8.4(g) because his repeated

violations of procedural rules could not constitute a violation.  Appellant's Brief at 15-16.

The district court held that "a course of errors can violate Rule 8.4(g) when it raises

evidence of incompetence, even when the errors are unintentional."  *Biocore*, 181 F.R.D.

at 674 (citing *In the Matter of Jenkins*, 877 P.2d 423, 429 (Kan. 1994)); *State v. Dixon*,

664 P.2d 286, 291 (Kan. 1983) (holding that an attorney "violates ethical standards when

he is unable or refuses to accept and perform the obligations of the legal profession")

---

[4]We are aware that both of these cases, as well as *Moore's*, cite the district court's
order now under review.  We have taken this into account in our analysis, so as to avoid
undue deference to the district court's conclusions of law.

(quotations omitted).

Butler attempts to distinguish *Jenkins* and *Dixon* on the ground that the ethical violations committed by those attorneys were more numerous and serious. Appellant's Brief at 15. However, neither *Jenkins* or *Dixon*–where the level of attorney misconduct that occurred justified disbarment–set forth the minimum level of conduct that can constitute a violation of MRPC 8.4(g). Rather, both *Jenkins* and *Dixon* establish the principle that a series of rules violations–showing unwillingness or inability to comply with professional responsibility requirements–can itself be an ethical violation. *Jenkins*, 877 P.2d at 429 (where the court was "concerned with the repeated evidence of incompetence set forth in the record"); *Dixon*, 664 P.2d at 289 (noting that the "misconduct in the instant case . . . involves a consistent and repeated practice of undertaking a responsibility to clients, and then totally ignoring that responsibility").

In this case, the district court found that Butler's repeated rules violations[5]–though less severe than the violations that occurred in either *Dixon* or *Jenkins*–"raise[d] serious questions about his [Butler's] ability and willingness to accept and perform the obligations of his representation in this case" and, therefore, violated MRPC 8.4(g). *Biocore*, 181 F.R.D. at 674. Butler was not, however, disbarred like the offending attorneys in *Dixon*, 664 P.2d at 291, and *Jenkins*, 877 P.2d at 429. Instead, the district

---

[5]These included 38 violations of D. Kan. Rule 83.5.4 alone, as well as numerous violations of other rules. *Biocore*, 181 F.R.D. at 666-70.

court imposed the milder sanction of having its order finding misconduct mailed to every

court Butler had been admitted to practice. *Biocore*, 181 F.R.D. at 676. As such, the

district court's actions were not inconsistent with either *Dixon* or *Jenkins*. Further, the

district court's actions were consistent with the comment to MRPC 8.4(g) which states:

"A pattern of repeated offenses, even ones of minor significance when considered

separately, can indicate indifference to legal obligation." In view of this, and of the

precedents cited, we agree that Butler's repeated violations of procedural rules can

properly be considered a violation of Rule 8.4(g).

Finally, Butler argues that his ignorance of the law excuses his violations of rules

pertaining to the signing of discovery demands and responses by local counsel, and the

filing of these with the district court. *See* Appellant's Brief at 15 ("This procedure was

foreign to Butler.") (citing D. Kan. Rule 26.3, Fed. R. Civ. P. 5(d), and D. Kan. Rule

83.5.4(c)).

We cannot accept this argument. "The general rule that ignorance of the law or a

mistake of law is no defense . . . is deeply rooted in the American legal system." *Cheek v.

United States*, 498 U.S. 192, 199 (1991). In addition, Butler remained ignorant of the

local rules even when he had reason to believe he might be violating them; the district

court found that "[e]ven after plaintiffs made an issue of Butler's non-compliance [with

this rule], . . . Butler still refused to comply." *Biocore*, 181 F.R.D. at 666. Furthermore,

part of D. Kan. Rule 83.5.4's purpose in requiring meaningful involvement of local

counsel is to ensure that attorneys admitted *pro hac vice* are aware of and comply with local requirements. *Id.* at 669; *see Ingemi v. Pellino & Lentz, P.C.*, 866 F. Supp. 156, 162 (D.N.J. 1994) (explaining that "[d]istrict court local rules which require local counsel to take more than a [*de minimis*] role" are important because "members of our Bar are familiar with the rules and customs of this Court and are expected to both educate *pro hac vice* attorneys on, and enforce, those rules and customs."); *Mowrer v. Warner-Lambert Co.*, No. CIV.A. 98-2908, 1998 WL 512971, *1 (E.D. Pa. Aug. 19, 1998) ("Another purpose for the [local counsel] Rule appears to be predicated upon a notion that familiarity with local rules and procedures advances the goal of the efficient administration of justice."). Here, Butler contributed to his own ignorance of the law since it arose in connection with his violation of *pro hac vice* requirements. His ignorance therefore, cannot serve as an excuse for a violation of Fed. R. Civ. 45(b)(1).

For these reasons, we find that the district court had a reasonable basis to conclude that Butler violated MRPC 8.4(g).

## C

### Allegation of Bias

Butler also argues that the "court was not even handed" with him by "ignoring the conduct of Kansas counsel" in finding him in violation of Canon 9 and MRPC 8.4(g). For the reasons detailed above, we find that there is a reasonable basis to support the district court's finding that Butler committed ethical violations. As such, we find no

indication of bias by the judge in the record.

## IV

## Conclusion

We find no basis for Butler's argument that the district court clearly erred in assessing the evidence, or otherwise abused its discretion. *Cooter*, 496 U.S. at 405 (holding that a court would abuse its discretion by relying on a clearly erroneous assessment of the evidence). On the contrary, our review discloses a reasonable basis to support the conclusion that Butler violated the Kansas Code of Professional Conduct and the Kansas Rules of Professional Conduct. *Weeks* at 1207. We therefore AFFIRM the findings of the district court that Butler had committed attorney misconduct.

**United States Court of Appeals for the Tenth Circuit**
OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Patrick J. Fisher, Jr.
Clerk of Court

Jane B. Howell
Chief Deputy Clerk

November 26, 2003


Mr. Ralph L. DeLoach
Clerk
United States District Court for the District of Kansas
500 State Avenue
Room 259, U.S. Courthouse
Kansas City, KS 66101


        Re:     00-3181, Butler v. Biocore Medical
                Dist/Ag docket:  98-CV-2175

Dear Mr. DeLoach:

    Enclosed are a certified copy of the judgment and a copy of
the opinion filed in this case which are issued as the mandate of
this court.  See Fed. R. App. P. 41(a).  Please file it in records of
your court or agency.

    The clerk of the district court is requested to acknowledge
receipt of this mandate by file stamping and returning the enclosed
copy of this letter.  Any original record will be returned to you at
a later date.


    Please contact this office if you have questions.

                        Sincerely,

                        PATRICK FISHER
                        Clerk


                        By: _____
                        Deputy Clerk


PF:kf

cc:  Daniel B. Denk
     Gregory P. Goheen
     Timothy F. Butler